IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JAMES M. SHORTT )<br>_____ ) | CR#: 3:05-1011-JFA<br><br>**SENTENCING ORDER** |

      This matter came before the court for sentencing of defendant James M. Shortt on July 17, 2006. On March 6, 2006, the defendant pled guilty to Count 1 of the Superseding Indictment filed November 16, 2005. Count 1 charged defendant with conspiracy to possess and distribute chemical substances outside the usual course of professional practice and not for a legitimate medical purpose.[1] The government moved for an upward departure or variance pursuant to United States Sentencing Guidelines ("U.S.S.G.") Section 5K2.0, on the ground that the 2005 Sentencing Guidelines do not adequately take into consideration key circumstances intrinsic to this case. Specifically, the government argues that (1) the

---

[1] Count 1 reads: "That beginning at a time unknown to the Grand Jury, but beginning at least in or around December 1998, and continuing through on or about September 21, 2005, in the District of South Carolina, and elsewhere, the defendant, JAMES M. SHORTT, knowingly and intentionally did conspire with others, both known and unknown to the grand jury, to knowingly, intentionally, and unlawfully possess with intent to distribute and dispense, to distribute and dispense, and to cause to be distributed and dispensed, not for a legitimate medical purpose and outside the course of professional practice, the anabolic steroids testosterone, stanozolol, nandrolone, fluoxymesterone, and oxymetholone, Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and human growth hormone, in violation of Title 21, United States Code, Section 333(e); All in violation of Title 21, United States Code, Section 846."

Sentencing Guidelines do not sufficiently address the seriousness of the defendant's conduct in trafficking in performance enhancing drugs; (2) the guidelines fail to include human growth hormone in § 2D1.1; (3) the defendant's prescribing steroids to a teenager is not accounted for by the guidelines; and (4) the partial adoption in the presentence report of the March 27, 2006 Amendment to the 2005 Guidelines Manual results in a piecemeal sentence that does not take into account the totality of the revised sentencing scheme.

The presentence report, prepared by the United States Probation Office and filed May 31, 2006, calculated a total offense level of six, with a criminal history category of I, corresponding to a guideline range of zero to six months in prison, supervised release of two years, a fine of $500.00 to $5,000.00, no restitution, with a mandatory special assessment of $100. Defendant is eligible for parole. Neither the government nor the defendant filed any objections to the presentence report.

Upon the government's motion for upward departure or variance filed June 13, 2006, the court advised the defendant by order dated June 15, 2006 that it was considering an upward variance and that defendant and his counsel should be prepared to discuss the matters raised in the government's motion at defendant's sentencing. At the sentencing hearing on July 17, 2006, the court heard extensive argument from counsel for the government and defendant. The defendant stated that he is unemployed and has no income, therefore the court approved a change in the presentence report to reflect the change in his income.

The defendant also presented written character references from the following: Mr. and

Mrs. William C. Shortt (defendant's parents), David W. Shortt (defendant's brother), Ralph Shortt (defendant's brother), Mr. and Mrs. William E. Hobson (defendant's friends), Ms. Florence Cunningham (defendant's friend and former patient), Mr. Horst Selent (defendant's former patient), Ms. Sylvia C. Hipp (defendant's former patient), James E. Chaffin, Jr., Esq. (defendant's colleague on a public interest project), and Gary M. Shortt (defendant's brother). The court entered the references as a part of the record. Additionally, the court heard character witness testimony from defendant's former patients Senator David Thomas, Mr. Richard LaBarre, Mr. Walter Lowman, as well as from Mr. William Shortt, and Mr. Andy Shortt (defendant's son) before hearing defendant's own allocution statement.

## Court's Sentencing Decision

After hearing extensive argument from counsel for the defendant and the government on an appropriate sentence and on government's motion for upward departure or variance, the court followed the procedure dictated by U.S. v. Moreland, 437 F.3d 424 (4th Cir. 2006) in sentencing the defendant outside the guideline range.

First, the court made findings of fact without objection and calculated the applicable guideline range to be zero to six months. Second, the court determined that a sentence within that range did not adequately serve the factors set forth in 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A). Third, the court determined there was not an appropriate basis for a traditional departure based on the Guidelines or relevant case law. Fourth, the court elected to impose a non-guideline variance sentence of a year and one day. In imposing the variance, the court

articulated the reasons for the sentence and explained the upward variance from the guideline range as tied to the factors set forth in § 3553.

The court determined that a sentence within the guideline range inadequately addressed the nature and circumstances of the offense and the history and characteristics of the defendant under 18 U.S.C. § 3553(a)(1), and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense under 18 U.S.C. § 3553(a)(2)(A). The court articulated several specific factors that influenced its decision to grant the government's motion for an upward variance.

First, the court was disturbed by the defendant's repeated efforts to conceal his wrongdoing. The defendant in this case treated bodybuilders as well as professional athletes; however, the method of dispensation was different for the two. The bodybuilders, who were not tested in their profession, were given straight injectable anabolic steroids, whereas the athletes were treated with methods designed to conceal the use of the contraband. Defendant's concealment efforts included monitoring the ratios of testosterone for precursor and byproduct chemicals, avoiding certain anabolic steroids specifically tested for by the National Football League (NFL), and prescribing non-detective human growth hormone. The defendant's methodical and repeated actions clearly demonstrated an extensive effort to conceal the use of illegally-prescribed steroids.

Second, the court noted defendant's surprisingly cavalier attitude towards the prescription and use of steroids, including defendant's own taped conversation with his

patient-athlete Jeff Mitchell regarding a joke played on another of defendant's patient-athletes by their football team's head trainer. Allegedly, the trainer sent the athlete a bogus NFL letter indicating that he had failed his drug test. Instead of viewing the "joke" as a wake-up call to cease their steroid use, that athlete and others returned to defendant for more steroids because of their confidence that defendant could conceal their use from NFL testing. Defendant's attitude was also demonstrated by some of the recordings in which he talked about athletes getting the "best bang for the buck." Suffice it to say that defendant's efforts at concealment and his cavalier attitude about steroid use played a major part in the court's decision in this case.

Third, the court noted the extent of the offense involved in this case. The conduct to be punished was pervasive and extensive—spanning a three-and-one-half year period. The undisputed record reveals 139 dispensations of anabolic steroids either for prescriptions or refills, including 1217 milliliters of injectable anabolic steroids, 1110 milliliters of anabolic steroid cream, 246 troches or lozenges, and 225 anabolic steroid tablets. By the defendant's own admission, he had athletes, "flying in from all over," to receive his illegal steroid and HGH-dispensing services.

Fourth, the court considered that HGH was specifically not covered by the sentencing guidelines. Instead of accounting for any HGH, the guidelines cross-reference the relevant fraud guidelines. Because the fraud guidelines are driven by the amount of money involved in the fraud, the HGH sentencing guidelines dissolve into nothing in this case because

defendant dispensed the HGH directly from his medical office, thereby preventing any possible financial accounting. The end result is that the guidelines impose no penalty at all for defendant's illegally dispensing of HGH prescriptions.

Fifth, and of considerably less importance in the court's decision, is the dispensation of testosterone to a teenager. The record is not abundantly clear as to the medical need for that treatment, but it is consistent with the other conduct that occurred in this case.

Sixth, the court cannot ignore the controversy surrounding the use of steroids by professional athletes. Performance enhancing drugs such as human growth hormone and steroids irreparably tarnish the career achievements of many athletes whose records and accomplishments are called into question. In that sense then, the victims of crimes such the defendant's include not only the athletes themselves, but also sports fans in living rooms all over the country.

The final factor that the court relied upon in imposing this sentence a lack of remorse in his allocution statement for his transgressions. Prior to being indicted, defendant told HBO interviewer Bob Costas that he had not done anything wrong or illegal, and, at sentencing, in spite of his guilty plea, he repeated that same refrain in his allocution statement. Specifically, defendant stated:

> I have admitted to you when I pled that in fact I did use hormones, both steroid and non-steroid, and have used those *for what have been called the purposes of performance enhancement, which I consider somewhat equivalent to healing and repairing*. And I understand that that is illegal, and I accept that, and that I went beyond the boundaries of where I should. (Emphasis added)

6

By saying "performance enhancement, which I consider somewhat equivalent to healing and repairing," defendant demonstrates an utter lack of remorse for his illegal actions.

Therefore, the court considered the nature and circumstances of the offense and the history and characteristics of the defendant under 18 U.S.C. §§ 3553(a)(1), and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense under 18 U.S.C. § 3553(a)(2)(A). Having considered the compelling circumstances of this case, the court found the imposition of a variance sentence better serves the competing interests of § 3553 than would a guideline sentence. The court found the specific variance sentence of twelve months and one day to be the minimum sentence necessary to satisfy the statutory mandate of § 3553.

Therefore, it is the judgment of the court that the defendant should be committed to the custody of the Bureau of Prisons to be imprisoned for a term of twelve months and one day. With a sentence of twelve months and one day, the defendant will be eligible to earn good time credit and can thereby reduce his sentence by fifteen percent.

It is further ordered that the defendant pay a special assessment of $100 to the United States, due immediately. The court finds the defendant has the ability to pay the minimum fine of $500. Interest on the fine is waived.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of two years. Within 72 hours of his release from custody of the Bureau of

Prisons, the defendant shall report in person to the probation office in the district to which he is released. While on supervised release, the defendant shall comply with the mandatory and standard conditions of supervision contained in 18 U.S.C. § 3583(d), and also the special condition of paying the remaining fine balance at a rate of not less than $200 per month. The court allows the defendant to self-surrender after conclusion of any appeal he takes in this matter.

Upon motion of the government, the court dismisses all remaining counts of the indictment. The court recommends that defendant be allowed to serve his sentence at FCI Dublin, California, the closest facility to his family.

At the sentencing hearing, the court advised the defendant that he has ten days from sentencing to appeal his conviction and the sentence the court has imposed. If defendant cannot afford an attorney for purposes of appeal, the court would appoint one for him.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

July 25, 2006  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge